ISABELLA A. POTTER *vs.* MINERVA C. CROCKER.

Worcester.    January 17, 1924. — March 3, 1924.

Present: RUGG, C.J., DeCOURCY, PIERCE, CARROLL, & WAIT, JJ.

*Contract,* Construction, Performance and breach, Termination.   *Words,*
  " Funds . . . raised and obtained."

In an action of contract, it appeared that the defendant agreed in writing
  with the plaintiff and others, in consideration of their allowing him to
  acquire certain mines then mortgaged to him, to form a new corpora-
  tion and take over the mines, and promised to " see to it that when
  sufficient funds are raised by the said corporation to be formed for the
  unwatering, equipping and developing the said " mines certain sums
  would be paid to the plaintiff and others.   It also was agreed that the
  sum of $150,000 " shall be deemed the maximum amount sufficient for
  unwatering, equipping and developing " the mines; that the sums
  payable to the plaintiff and others should be due and payable when
  enough money was " raised for the unwatering, equipping and develop-
  ing " of the mines, or as soon as $150,000 was raised for those purposes.
  The agreement further provided that the defendant " hereby guaran-
  tees " the payment of the sums as soon as the new corporation was
  organized and " the aforesaid sufficient funds for the unwatering,
  equipping and developing of said mines," or the sum of $150,000 had
  been " raised and obtained."   The new corporation was organized.
  Five and one half years later the mines had been entirely unwatered,
  $53,000 worth of bullion had been mined at an expense of $143,000,
  and at the end of that time the company was in debt $56,000.   During
  the period, beside the bullion, $96,000 had been procured for the com-
  pany.   With the parties' consent and by a vote of the corporation, an
  outside party under contract then took over the property and managed
  it, and in about two years bullion in the sum of $75,000 was produced
  at a cost of $111,000.   *Held,* that
    (1) The sum of $150,000 never was " raised or obtained " for the
  purposes of unwatering, equipping and developing the mine according
  to the terms of the contract and it did not appear that a sum sufficient
  for that purpose ever was obtained in the manner contemplated by the
  contract;
    (2) The contract did not mean that the plaintiff could demand the
  sum promised to him, when, by operating the mine at a loss, the gross
  sum of $150,000 was realized;
    (3) The bullion could not be considered as part of the fund raised;
    (4) After the corporation had passed into the control of the outside
  party under the agreement of the stockholders, including the plaintiff,
  the contract with the defendant was at an end;

(5) Evidence, offered by the plaintiff, tending to show that money expended in obtaining ore from the mine had been procured for its development, was inadmissible.

CONTRACT for $2,100, alleged to be due to the plaintiff by reason of an agreement in writing signed by the defendant and described in the opinion. Writ dated August 4, 1914.

In the Superior Court, the facts were agreed upon. Notification by the Gold Hill and Iowa Mines Company to its stockholders relating to the proposition of F. W. Estabrook, referred to in the opinion, was in part as follows:

" As the Gold Hill and Iowa Mines Company is indebted in certain amounts to various persons, corporations, firms and partnerships in the State of Idaho, amounting to about $6,500.00, and also to various parties and corporations in the State of Massachusetts amounting to about $51,000.00, and is unable to obtain funds with which to pay said indebtedness and to cover running expenses (the Company having, within a short time, practically worked out the ore body from which it has obtained funds to carry on the work during the past eighteen months), the Board of Directors has voted to accept a proposition from F. W. Estabrook of Boston, Massachusetts, by which, in consideration of the Company giving him a controlling interest and other considerations, he will pay off the existing indebtedness at the mine and do 500 feet of prospecting. If he fails to do this work he agrees to turn over the property free from all claims or demands caused by and in the operation of said property or in any way incurred by him in his operations and work in or on said property. If he completes the 500 feet of prospecting 51% of the stock of the Company is to be issued to him. The money expended by him is to be a charge against the gross profits of bullion returns, but is not to a charge against the property."

Other material facts are described in the opinion. The action was reported to this court by *Hammond, J.,* for determination upon the pleadings and agreed facts.

*R. B. Owen,* for the plaintiff.

*E. W. Baker,* for the defendant.

CARROLL, J. The defendant agreed in writing with the plaintiff and others, in consideration of their allowing her

" peaceably [to] acquire the Iowa Groups Mines," then mortgaged to the defendant, that she would form a new corporation and take over the mines; and promised to " see to it that when sufficient funds are raised by the said corporation to be formed for the unwatering, equipping and developing the said Gold Hill & Iowa Groups Mines," certain sums would be paid the plaintiff and others. It was also agreed that the sum of $150,000 " shall be deemed the maximum amount sufficient for unwatering, equipping and developing " the mines; that the sums payable to the plaintiff and others should be due and payable when enough money was " raised for the unwatering, equipping and developing " of the mines, or as soon as $150,000 was raised for this purpose. The agreement further provided that the defendant " hereby guarantees that the new corporation to be organized, . . . shall pay to the said parties of the second part the . . . sums to which they are respectively entitled, . . . as soon as the said new corporation, shall have been organized and the aforesaid sufficient funds for the unwatering, equipping and developing of said mines," or the sum of $150,000 had been " raised and obtained; " and if the new corporation failed to pay the sums mentioned in the agreement, the defendant agreed to make these payments " within six months after the said new corporation shall have been organized," and money enough for the purpose already mentioned, or the sum of $150,000 for this purpose " shall have been raised and obtained."

Pursuant to the agreement a new corporation was formed January 3, 1907. Between that time and October 1, 1912, various sums amounting to $148,921.58 were secured. Of this amount $53,196.20 was received from bullion, the cost of mining the same being $143,057. The expenses during this period were $161,755.66, and on October 1, 1912, the company's debts amounted to $56,728.24. On October 5, 1912, the stockholders were notified by the directors that the company was badly in debt, and that one Estabrook was ready to take over the mines under certain conditions. The plaintiff received this notice and sent her proxy, which was voted at the stockholders' meeting ratifying the action

of the board of directors who had accepted the Estabrook contract. From October 1, 1912, to August 4, 1914, under Estabrook's management there was produced in bullion $75,578, the expenses being $111,357.08. It was agreed that the mine was entirely unwatered in February, 1910.

The sum of $2,100 to be paid the plaintiff under the contract has not been paid to her, either by the defendant or by the corporation.

Assuming but not deciding, that the promise of the defendant was an original promise and not a mere guaranty, the defendant's agreement was to pay the sum stipulated when sufficient funds were " raised " by the new corporation for the " unwatering, equipping and developing of said mines." The sum of $150,000 was never raised or obtained for this purpose according to the terms of the contract, and it was not shown that a sum sufficient for the purpose was ever obtained in the manner contemplated by the contract. The contract provided that the plaintiff was to be paid when the money was raised or obtained. This meant that money adequate in amount, but not exceeding $150,000 was to be collected or acquired, by the sale of the stock of the corporation, or by loans or other obligations of the company, or by operating the mines at a profit, so that it would be available for the purpose from the net profits of the undertaking.

As we construe the contract, it did not mean that the plaintiff could demand the sum named, when, by operating the mine at a loss, this amount was realized. The money expended in connection with the operation was more than $160,000, and the receipts from the sale of stock and from the mortgage were $83,367.50. The money received from bullion was $53,196.20, but the cost of mining this was $143,057. There was no evidence that money sufficient in amount to accomplish the purpose was ever raised in the manner or from the source intended. The total amount received by the corporation from all sources, including the sale of bullion, was less than $150,000. It amounted to $148,921.58, and the expenses during that period greatly

exceeded the receipts, so that on October 1, 1912, the corporation had an indebtedness of $56,728.24.

The plaintiff contends that the bullion obtained from the mine must be considered as money so raised, irrespective of the cost of mining. The agreement specified that funds were to be " raised and obtained; " and until this was done the plaintiff could not recover against the defendant. The bullion did not exceed in amount $53,196.20 and cannot be considered as a part of the fund raised. Deducting the expenses, there was no money available from the sale of bullion.

The plaintiff further contends that, in ascertaining the funds secured, to the sum of $148,921.58, being the total amount received by the corporation to October 1, 1912, without deducting the expenses, should be added the sum of $50,000, which Estabrook advanced to the corporation while it was under his management. After the corporation passed to the control of Estabrook, under the agreement of the stockholders, including the plaintiff, the original contract was at an end. The plaintiff could not thereafter rely on the funds advanced under this new and different contract with a third person, to show a breach of the plaintiff's contract with the defendant. The evidence offered by the plaintiff that the money expended in obtaining ore from the mine had been procured for its development, was inadmissible. The contract was in writing. *Waldstein* v. *Dooskin,* 220 Mass. 232.

As the plaintiff cannot recover, for the reason that the funds necessary for the unwatering, equipping and developing of the mine have not been " raised or obtained," as provided in the contract, we have not thought it necessary to consider the question of the plaintiff's waiver of the original contract by entering into the contract with Estabrook. Judgment is to be entered for the defendant.

*So ordered.*